TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 96-703 |
| of | : | |
| | : | March 21, 1997 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. DE VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE LOUIS PAPAN, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May the city manager or assistant city manager of the City of South San Francisco serve simultaneously on the board of trustees of the South San Francisco Unified School District?

CONCLUSION

The city manager of the City of South San Francisco may not serve simultaneously on the board of trustees of the South San Francisco Unified School District. The assistant city manager may serve simultaneously on the board of trustees.

ANALYSIS

The common law doctrine of incompatible public offices prevents a person from holding simultaneously two public offices if the performance of the duties of either office could have an adverse effect on the other. (75 Ops.Cal.Atty.Gen. 10, 12 (1992).) In 66 Ops.Cal.Atty.Gen. 176, 177-178 (1983), we summarized the applicable rules as follows:

"`Offices are incompatible, in the absence of statutes suggesting a contrary result, if there is any significant clash of duties or loyalties between the offices, if the dual office holding would be improper for reasons of public policy, or if either officer exercises a supervisory, auditory, or removal power over the other.' [Citations.]

"The policy set forth in *People ex rel.Chapman* v. *Rapsey* [(1940) 16 Cal.2d 636] comprehends prospective as well as present clashes of duties and loyalties. [Citation.]

"`Neither is it pertinent to say that the conflict in duties may never arise; it is enough to say that it may, in the regular operation of the statutory plan.' [Citation.]

"`Only one significant clash of duties and loyalties is required to make offices incompatible. . . .' [Citation.] Furthermore, `[t]he existence of devices to avoid . . . [conflicts] neither changes the nature of the potential conflicts nor provides assurance that they would be employed. . . .' [Citation.] Accordingly, the ability to abstain when a conflict arises will not excuse the incompatibility or obviate the effects of the doctrine. A public officer who enters upon the duties of a second office automatically vacates the first office if the two are incompatible. [Citation.] Both positions, however, must be offices. If one or both of the positions is a mere employment as opposed to a public office, the doctrine does not apply. [Citation.]"

We are asked to determine whether the incompatible offices doctrine applies to a city manager or an assistant city manager who is interested in serving on a local school board. We conclude that the doctrine would apply in the first situation, but not the second.

The primary issue to be resolved is whether the positions in question are public offices. In 68 Ops.Cal.Atty.Gen., *supra*, at 342 we summarized the elements of a public office:

". . . For the purpose of the doctrine of incompatible public offices, a public office is a position in government (1) which is created or authorized by the Constitution or some law; (2) the tenure of which is continuing and permanent, not occasional or temporary; (3) in which the incumbent performs a public function for the public benefit and exercises some of the sovereign powers of the state."

These general elements of a public office have been examined and applied in various situations. (See *Dibb* v. *County of San Diego* (1994) 8 Cal.4th 1200, 1212; 78 Ops.Cal.Atty.Gen. 362, 364-365 (1995); 74 Ops.Cal.Atty.Gen. 82, 83 (1991).)

In *Schaefer* v. *Superior Court* (1952) 113 Cal.App.2d 428, 432-433, the court clarified the meaning of the phrase "sovereign powers of the state":

"If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the State, if the appointee is invested with independent power in the disposition of public property or with the power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the state."

The court in *Main* v. *Claremont Unified School Dist.* (1958) 161 Cal.App.2d 189, 204, ruled similarly.

We have previously determined that a member of a local school board holds a public office for purposes of the common law prohibition. (73 Ops.Cal.Atty.Gen. 183, 185 (1990); 68 Ops.Cal.Atty.Gen. 240, 241 (1985); 66 Ops.Cal.Atty.Gen. 382, 384 (1983); 65 Ops.Cal.Atty.Gen. 606 (1982); 56 Ops.Cal.Atty.Gen. 488, 489 (1973); 48 Ops.Cal.Atty.Gen. 141 (1966).)

We have also concluded that a city manager occupies a public office (51 Ops.Cal.Atty.Gen. 183, 184 (1968)), as does a city administrator (22 Ops.Cal.Atty.Gen. 83, 84-86 (1953)). (See also 68 Ops.Cal.Atty.Gen. 337, 344-346 (1985) [hospital district general manager holds a public office].) The city in question is a general law city with a city manager form of government. (Gov. Code, §§ 34851-34859.) **Footnote No. 1** The powers and duties of the city manager are defined by ordinance. (§ 34851.) We have examined the city's municipal code and find that the city manager is the administrative head of the city's government, charged with the administration of all affairs of the city. The position of city manager clearly meets the tests of being a public office in that it is established by law, the tenure is permanent and continuing, and it is vested with the power to perform a public function for the public benefit and some of the sovereign

and it is vested with the power to perform a public function for the public benefit and some of the sovereign powers of the state. (§§ 34851-34852.)

With respect to the position of the assistant city manager in question, neither the position itself nor the duties of the position are established by law, nor is the position anywhere referred to in the statutes pertaining to the city manager or in the city's municipal code. We are advised that the assistant city manager is appointed by the city manager and acts as an employee having responsibilities only as directed by the city manager. The fact that the assistant city manager may from time to time perform some of the duties of the city manager does not transform the assistant city manager into the city manager (*cf. People* v. *Kwolek* (1995) 40 Cal.App.4th 1521, 1530-1531; 79 Ops.Cal.Atty.Gen. 159, 161-162 (1996)), or the position of assistant city manager into a public office (see 78 Ops.Cal.Atty.Gen. 362, *supra*, [sheriff's deputy chief]; 56 Ops.Cal.Atty.Gen. 556 (1973) [assistant superintendent of public instruction]). Accordingly, the positions of assistant city manager and school board trustee are not incompatible under the common law doctrine, since the former is not a "public office."

The only issue remaining, therefore, is whether the offices of city manager and school board trustee are incompatible. In 73 Ops.Cal.Atty.Gen. 354 (1990) we concluded that the positions of city councilman and school district board member were incompatible based on a number of potential conflicts:

"1.   Under the Education Code, contracts between the district and the city are authorized for the following purposes: community recreation [citation]; health supervision [citation]; library services [citations]; the sale, lease, or dedication of real property [citations]; and the installation of water, sewerage, or other public utilities [citations].

"2.   In eminent domain proceedings, either public body may condemn property of the other where a superior use can be shown. [Citation.]

"3.   School districts may dedicate real property to cities for certain public purposes. [Citation.]

"4.   In the establishment of a city master plan, the city may chart the location of future schools. [Citations.]

"5.   City officials are charged with enforcement of health and safety regulations within the schools. [Citation.]" (*Id.*, at pp. 356-357.)

These areas of conflict are just as applicable for a city manager as for a city council member.

As discussed at the outset, only one significant clash of duties and loyalties is required to render offices incompatible. Here we have numerous areas of possible conflict "`in the regular operation of the statutory plan.'" (66 Ops.Cal.Atty.Gen., *supra*, at 177.) We thus entertain no doubt that these two offices are incompatible. (See *People ex rel. Deputy Sheriffs' ssn.* v. *County of Santa Clara* (1996) 49 Cal.App.4th 1471, 1484.)

It is concluded that the city manager of the City of South San Francisco may not serve simultaneously on the board of trustees of the South San Francisco Unified School District. The assistant city manager may serve on the board of trustees without violating the incompatible public offices doctrine.

\* \* \* \* \*

---

**Footnote No. 1**
All references hereafter to the Government Code are by section number only.